**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United Biomedical Incorporated,<br><br>          Plaintiff,<br><br>v.<br><br>ubi-group.global,<br><br>          Defendant. | No. CV-23-01088-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff United Biomedical, Inc.'s ("Plaintiff") Third Motion for Default Judgment ("Motion"). (Doc. 30). Defendant domain name ("Defendant") has not appeared or filed any response. The Court now rules.

## I.   BACKGROUND

Plaintiff is a private, closely held biopharmaceutical company that partners with other firms and companies to commercialize its products. (Doc. 1 at 2). Plaintiff owns and operates an official website at "unitedbiomedical.com" to "project a corporate image that reflects the values of its employees, management, and shareholders." (*Id.*). Additionally, Plaintiff owns a family of registered trademarks, including the following:

> a.   UBI (logo), United States Registration No. 1,874,947, registered on January 25, 1995 for chemical reagents for immunodiagnostic tests for scientific and research (International Class 001), and diagnostic preparations for clinical or blood banks (International Class 005), with dates of first use being at least as early as February 1991;
> b.   UBI, United States Registration No. 1,392,831, registered on May 13, 1986 for chemical reagents for immunological

|   |   |
|---|---|
| 1 | assays (International Class 001), with a date of first use being at least as early as September 13, 1985; and |
| 2 | c. Foreign marks registration [in a list attached to the Complaint.] |
| 3 |   |

(*Id.* at 3–4). A domain, which Plaintiff alleges infringes its registered marks, was registered as "ubi-group.global" on September 1, 2022. (*Id.* at 4–5). The allegedly infringing website prominently displays Plaintiff's registered logo and conveys similar messaging about various of the products that Plaintiff provides. (*Id.*).

Plaintiff filed this action under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(2), against the allegedly infringing domain, stating that the domain is "materially identical and confusingly similar to Plaintiff's registered trademarks." (*Id.* at 6).

The allegedly infringing domain's registrar is GoDaddy.com, LLC ("GoDaddy"). (Doc. 16 at 2). The underlying registrant of the allegedly infringing domain is kept anonymous through Domains By Proxy, LLC, which Internet Corporation for Assigned Names and Numbers ("ICANN") records indicate has an address in Arizona. (Doc. 1 at 6). Because of the anonymity, Plaintiff has been unable to locate any contact information for the true registrant. (*Id.*). Plaintiff has sent two separate letters to Domains By Proxy, LLC demanding (1) that the entity provide the identity of the true registrant, and (2) that the allegedly infringing domain be taken down; Plaintiff has received no response. (*Id.*).

Plaintiff has also attempted service upon Defendant domain name via serving GoDaddy, but GoDaddy replied stating that it was unable to accept service on behalf of Defendant domain name, and that the attached documents would not be forwarded. (Doc. 16 at 3).

The Clerk of Court entered default as to the originally-named Defendant, the domain name "UBI-Global Group.com," on August 23, 2023. (Doc. 15). Plaintiff filed a first Motion for Default Judgment, or alternatively, Motion to Authorize Service by Publication, on September 1, 2023. (Doc. 16). This Court denied Plaintiff's first Motion for Default Judgment without prejudice to refile once Plaintiff effectuated service by publication. (*See*

*generally* Doc. 18). On December 12, 2023, Plaintiff notified the Court that service by publication had been executed, (Doc. 20), and on December 20, 2023, Plaintiff filed a Second Motion for Default Judgment, (Doc. 21). The Court again denied Plaintiff's motion, noting that the allegedly infringing domain name from Plaintiff's recitation of the facts, "ubi-group.global," did not match the Defendant domain name, "UBI-Global Group.com." (Doc. 22).

Plaintiff then filed an amended complaint in which Plaintiff named "ubi-group.global," the correct domain name, as the Defendant. (Doc. 23). Plaintiff executed service by publication, (Doc. 27), the Clerk of Court entered default, (Doc. 29), and Plaintiff filed the instant Third Motion for Default Judgment as to "ubi-group.global," (Doc. 30). For the reasons stated below, the Court grants Plaintiff's Motion.

## II.  *IN REM* JURISDICTION & SERVICE OF PROCESS

"The ACPA, which was adopted in 1999, provides two different methods for the owner of a trademark or service mark to seek the transfer of an Internet domain name that is identical or confusingly similar to the owner's mark." *Hi-Rise Tech., Inc. v. Amatuerindex.com*, 2007 WL 1847249, at *1 (W.D. Wash. 2007). Namely, the ACPA provides for either *in personam* or *in rem* jurisdiction, each in specified circumstances. Here, Plaintiff filed suit under the sections of the ACPA that provide for *in rem* jurisdiction. The sections relevant to jurisdiction and service of process provide the following:

> (2)(A) The owner of a mark may file an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if--
> (i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark Office, or protected under subsection (a) or (c); and
> (ii) the court finds that the owner--
> (I) is not able to obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action under paragraph (1); or
> (II) through due diligence was not able to find a person who would have been a defendant in a civil action under

>paragraph (1) by--
>>(aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>>(bb) publishing notice of the action as the court may direct promptly after filing the action.
>>(B) The actions under subparagraph (A)(ii) shall constitute service of process.
>>(C) In an *in rem* action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which--
>>>(i) the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located; or
>>>(ii) documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain name are deposited with the court.

15 U.S.C. § 1125(d)(2)(A)–(C).

Pursuant to this Court's previous Orders, (Doc. 18, Doc. 22), Plaintiff executed service by publication to comply with the ACPA's requirements. (*See* Doc. 27). As such, this Court may now properly exercise *in rem* jurisdiction over Defendant in this action.

### III. LEGAL STANDARD

Once the clerk has entered default, a court may, but is not required to, grant default judgment under Rule 55(b) on amounts that are not for a sum certain. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (per curiam). In considering whether to enter default judgment, a court may consider the following factors:

>(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). When considering these factors, Defendant is deemed to have admitted all well-pleaded allegations in the complaint but

does not admit allegations related to damages or those that do no more than "parrot" the elements of a claim. *DirecTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007).

## IV. DISCUSSION

### a. Possibility of Prejudice

A possibility of prejudice exists when failure to enter default judgment denies a plaintiff judicial resolution of the claims presented or leaves them without other recourse for recovery. *Elektra Entm't Grp., Inc. v. Crawford*, 226 F.R.D. 388, 392 (C.D. Cal. 2005). Because Defendant has not answered, Plaintiff will likely be left without recourse if default judgment is not granted. Therefore, this factor weighs in favor of granting the motion.

### b. The Sufficiency of the Complaint and the Merits of Plaintiff's Substantive Claim

"The second and third *Eitel* factors address the substantive merits of the claim and the sufficiency of the complaint and are often analyzed together." *Joe Hand Promotions, Inc. v. Garcia Pacheco*, No. 18-cv-1973-BAS-KSC, 2019 WL 2232957, at *2 (S.D. Cal. May 23, 2019). These two factors favor entering default judgment when, considering the complaint and relevant documentary evidence, a plaintiff "state[s] a claim on which [he] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also J & J Sports Prods., Inc. v. Molina*, No. CV15-0380 PHX DGC, 2015 WL 4396476, at *1 (D. Ariz. July 17, 2015) (considering affidavits attached to the motion for default judgment).

Plaintiff's ACPA claim requires the following:

> (1) the registration, use, or trafficking in, a domain name (2) that is identical or confusingly similar to a distinctive or famous trademark, (3) with a bad faith intent to profit from the mark. *See* 15 U.S.C. § 1125(d)(1)(A)2; *see also Bosley*, 403 F.3d at 680. Section 1125(d)(1)(B)(i) enumerates nine nonexclusive factors a court may consider in determining whether a registrant had a bad faith intent to profit from a plaintiff's mark.[1] Courts need not, however, march through the

---

[1] The factors included but are not limited to: (I) the trademark or other intellectual property rights of the person, if any, in the domain name; (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; (III) the person's prior use, if any, of the domain name in connection

- 5 -

>nine factors seriatim because the listed criteria are permissive and the ACPA allows for consideration of the unique circumstances of the case. *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009).

*beIN Media Group LLC v. bein.ae*, No. 3:18-cv-1042-CAB-(MDD), 2019 WL 1129153, at \*4 (S.D. Cal. Mar. 11, 2019).

Here, Plaintiff has named, and attached screenshots of, the registered domain name at issue, satisfying (1). Plaintiff has further stated that it owns several registered U.S. trademarks, as discussed above, establishing distinctive marks under (2). Also under (2), the screenshots that Plaintiff provided show that the allegedly infringing domain displays a mark that is identical to one of Plaintiff's registered marks and a website that is confusingly similar to Plaintiff's official website. Finally, the Court finds the requisite bad faith to satisfy (3). Addressing some relevant bad faith factors, the Court notes that there is no evidence that Defendant has any intellectual property rights in the domain name or that Defendant has made any prior bona fide offering of any goods or services. Moreover, based on Defendant's noticeable mimicry of Plaintiff's website, the Court presumes Defendant's intent is to divert consumers away from Plaintiff's online location. The Court also finds Defendant's choice to remain anonymous significant, as in these circumstances, it evidences an attempt to evade suit. Thus, as Plaintiff's allegations have satisfied all

---

with the bona fide offering of any goods or services; (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; (VI) the person's offer to transfer, sell or otherwise assign the domain name to the mark owner or any third party for financial gain without having use, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c). 15 U.S.C § 1125(d)(1)(B)(i). *beIN Media Group*, 2019 WL 1129153, at \*4 n.3.

elements of an ACPA claim, factors two and three favor granting the motion for default judgment.

### c. Sum at Stake

"Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of [Defendant's] conduct." *Bankers Ins. Co. v. Old W. Bonding Co., LLC*, No. CV11-1804 PHX DGC, 2012 WL 2912912, at *2 (D. Ariz. July 16, 2012). In the context of an *in rem* action under the ACPA, the remedy is limited to "a court order for the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(2)(D)(i). As such, Plaintiff requests only this remedy. (*See generally* Doc. 1). The Court thus finds that this factor weighs in favor of granting the motion for default judgment.

### d. Possibility of Disputed Material Facts

Considering the allegations that are now deemed admitted and the documentary evidence that Plaintiff has submitted, including screenshots of Plaintiff's mark being prominently used on a website advertising strikingly similar products and services to Plaintiff's, "no genuine dispute of material facts would preclude granting Plaintiff's motion." *See PepsiCo., Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). This factor thus weighs in favor of granting the motion for default judgment.

### e. Excusable Neglect

On this record, little possibility exists that Defendant's default resulted from excusable neglect because Defendant was duly served. Moreover, before serving by publication, Plaintiff made multiple attempts to obtain contact information from the registrant of the allegedly infringing domain, but the registrant never replied. No other facts before the Court indicate that default is attributable to excusable neglect; to the contrary, the facts available indicate that default likely is attributable to an attempt by Defendant to evade suit. As such, this factor weighs in favor of granting the motion for default judgment.

### f. Policy Favoring Merits Decisions

Although it is true that "[c]ases should be decided upon their merits whenever

reasonably possible," *Eitel*, 782 F.2d at 1472, that is made "impractical, if not impossible," when a defendant fails to answer, *PepsiCo., Inc.*, 238 F. Supp. 2d at 1177. Thus, this factor does not preclude entering default judgment against Defendant.

### g. Weighing the Factors

On balance, the *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment. Having concluded that entry of default judgment is appropriate under the circumstances, the Court will now turn to evaluate Plaintiff's requested remedy.

## V. REMEDY

The only remedy Plaintiff requests is injunctive relief, which the Court finds warranted in this case.

## VI. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Plaintiff's Third Motion for Default Judgment, (Doc. 30), is **GRANTED**. The Clerk of the Court shall enter a Judgment and Permanent Injunction for Plaintiff United Biomedical Incorporated and against Defendant "ubi-group.global" as specified below.

**IT IS FURTHER ORDERED** that the Judgment and Permanent Injunction in this case is: GoDaddy, Inc., the current registrar for Defendant domain name, "ubi-group.global", must transfer ownership and control of Defendant domain name, "ubi-group.global", to Plaintiff.

**IT IS FINALLY ORDERED** that the Clerk of the Court is directed to mail a copy of the Judgment and Permanent Injunction to GoDaddy.com, LLC, at 2155 E. GoDaddy Way, Tempe, Arizona 85284.

Dated this 7th day of June, 2024.

James A. Teilborg
Senior United States District Judge